FILED
DEC 02 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARK POTTER,

    Plaintiff,

v.

THOMAS CROSSWHITE,

    Defendant.

CV 09-814-PK

FINDINGS AND
RECOMMENDATION

PAPAK, Magistrate Judge:

    Plaintiff Mark Potter, acting in his capacity as trustee of sixteen irrevocable life insurance trusts, brought this action against defendant Thomas Crosswhite on July 15, 2009. Potter alleged that Crosswhite (and/or persons allegedly acting as Crosswhite's agents) charged the sixteen trusts brokerage commissions in excess of the maximum commissions that Crosswhite (and/or his agents) had previously agreed to. In his complaint as originally filed, Potter alleged three separate claims of fraud, as well as claims of conversion, money had and received, and unjust enrichment. On February 17, 2010, Potter amended his complaint to identify the individual trusts

Page 1 - FINDINGS AND RECOMMENDATION AND ORDER

on behalf of which he brought this action (the "plaintiff trusts") and to amend his allegations of damages. Potter amended his complaint a second time on March 9, 2010. Potter asserted at all material times that this court had jurisdiction over his claims pursuant to 28 U.S.C. § 1332(a), based on the complete diversity of the parties and the amount in controversy.

On March 18, 2010, Potter voluntarily dismissed his claims to the extent brought on behalf of eight of the sixteen plaintiff trusts. On May 21, 2010, Potter voluntarily dismissed his claims to the extent brought on behalf of six of the remaining eight plaintiff trusts. On July 29, 2010, I recommended that the claims brought on behalf of the two remaining plaintiff trusts be dismissed for lack of subject-matter jurisdiction and for failure to establish personal jurisdiction over the defendant. On September 20, 2010, Judge King adopted my recommendation without modification, and Potter's claims were dismissed on jurisdictional grounds. On October 4, 2010, Crosswhite moved for an award of his attorney fees and costs as a sanction for Potter's allegedly improper conduct over the course of these proceedings pursuant to 28 U.S.C. § 1927 and/or the court's inherent power to sanction litigant or attorney misconduct, and on October 27, 2010, moved for imposition of the same sanction pursuant to Federal Civil Procedure Rule 11(c). In opposition to Crosswhite's motion for imposition of Rule 11(c) sanctions, Potter requested that he be awarded his own attorney fees incurred in resisting the motion. Crosswhite voluntarily withdrew his Rule 11(c) motion on November 23, 2010.

Now before the court are Crosswhite's motion (#35) for attorney fees and costs pursuant to 28 U.S.C. § 1927 and/or the court's inherent power to sanction litigant or attorney misconduct, and Potter's request for attorney fees and costs incurred in connection with Crosswhite's now-withdrawn motion (#42) for imposition of sanctions pursuant to Federal Civil Procedure Rule

Page 2 - FINDINGS AND RECOMMENDATION AND ORDER

11(c). I have considered the motions, oral argument on behalf of the parties, and all of the pleadings on file. For the reasons set forth below, Crosswhite's motion for attorney fees and costs should be denied, and Potter should be awarded his attorney fees and costs reasonably incurred in connection with his opposition to Crosswhite's motion for imposition of sanctions.

## LEGAL STANDARDS

### I.  28 U.S.C. § 1927

28 U.S.C. § 1927 provides as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. Under unambiguous Ninth Circuit jurisprudence, it is clear that Section 1927 applies only to the unnecessary multiplication of proceedings within the scope of an already filed action, and is entirely inapplicable to the filing of initial pleadings in an action:

> Because the section authorizes sanctions only for the "multipli[cation of] proceedings," it applies only to unnecessary filings and tactics once a lawsuit has begun. We have twice expressly held that § 1927 cannot be applied to an initial pleading. *See Zaldivar* [*v. Los Angeles*], 780 F.2d [823,] 831 (9th Cir. 1986) (under § 1927, "the *multiplication* of proceedings is punished, thus placing *initial* pleadings beyond" the section's reach) (emphasis in original); *Matter of Yagman*, 796 F.2d 1165, 1187 (9th Cir.) ("Section 1927 does not apply to initial pleadings, since it addresses only the multiplication of proceedings. It is only possible to multiply or prolong proceedings after the complaint is filed."), *amended*, 803 F.2d 1085 (9th Cir. 1986), *cert. denied*, 484 U.S. 963 (1987). In case these prior holdings were insufficiently clear, we restate the rule here. The filing of a complaint may be sanctioned pursuant to Rule 11 or a court's inherent power, but it may not be sanctioned pursuant to § 1927.

*Moore v. Keegan Mgmt. Co.*, 78 F.3d 431, 435 (9th Cir. 1996).

Sanctions may moreover only be imposed pursuant to Section 1927 upon a finding of

Page 3 - FINDINGS AND RECOMMENDATION AND ORDER

subjective bad faith on the part of the party to be sanctioned. *See New Alaska Development Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent," *Estate of Blas v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1986) (citations omitted), and a frivolous filing is one that is "*both* baseless *and* made without a reasonable and competent inquiry," *Keegan Mgmt.*, 78 F.3d at 434 (emphasis original). Therefore, "[f]or sanctions to apply, if a filing is submitted recklessly, it must be frivolous, while if it is not frivolous, it must be intended to harass. Thus, while it is true that reckless filings may be sanctioned, and nonfrivolous filings may also be sanctioned, reckless nonfrivolous filings, without more, may not be sanctioned." *Keegan Mgmt.*, 78 F.3d at 436.

## II.    The Court's Inherent Power to Sanction Misconduct

The federal courts have an inherent power to levy sanctions, including attorney fee sanctions, on litigants and/or their attorneys, in connection with a wide range of improper conduct, including the willful disobedience of a court order, willful abuse of the judicial process, or action undertaken in bad faith or with improper motivation. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980). As for Section 1927, sanctions may only be imposed pursuant to the court's inherent power upon a finding of subjective bad faith. *See United States v. Stoneberger*, 805 F.2d 1391, 1393 (9th Cir. 1986), *quoting Roadway*, 447 U.S. at 767. Also as for Section 1927, for purposes of the court's inherent power, a finding of bad faith is warranted where an attorney "knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. Cal. 2001), *quoting Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997).

Page 4 - FINDINGS AND RECOMMENDATION AND ORDER

### III. Federal Civil Procedure Rule 11(c)

Federal Civil Procedure Rule 11(c)(1) provides that the federal courts may impose appropriate sanctions on any attorney or party who, "after notice and an opportunity to respond," violates any of the provisions of Federal Civil Procedure Rule 11(b). Fed. R. Civ. P. 11(c)(1). A party moving for sanctions under Federal Civil Procedure Rule 11(c) must serve the motion on the party against whom sanctions are sought, and then may file the motion with the court any time following 21 days after service if the allegedly noncompliant filing is not withdrawn or otherwise appropriately corrected within that period. *See* Fed. R. Civ. P. 11(c)(2). Any sanction imposed pursuant to Rule 11(c) "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). Attorney fees may be awarded as a sanction under Rule 11(c) "if imposed on motion and warranted for effective deterrence," but must be limited to the fees and other expenses "directly resulting from the violation." *Id.* Rule 11(b) provides as follows:

> By presenting to the court a pleading, written motion, or other paper — whether by signing, filing, submitting, or later advocating it — an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

Where a party's pleading is the primary focus of Rule 11 proceedings, "a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually 'baseless' from an objective perspective, and (2) if the attorney has conducted 'a reasonable and competent inquiry' before signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002), *quoting Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997).

The courts have discretion to award a party prevailing on a Rule 11(c) motion its reasonable expenses, including attorney fees, incurred in connection with the motion, where such an award would be "warranted." Fed. R. Civ. P. 11(c)(2).

## FACTUAL BACKGROUND

### I. The Parties' Underlying Dispute

According to the allegations of Potter's second amended complaint, the corpus of each of the plaintiff trusts was one or more life insurance policies issued on the life of the settlor of the trust. *See* Second Amended Complaint, ¶ 5. Each plaintiff trust held the insurance policy or policies for at least 24 months, after which the settlor sold the policy or policies on the secondary market. *See id.*, ¶ 6. The plaintiff trusts relied upon the services of Steven Biggs and Unique Settlements, LLC, as brokers for the sale of the insurance policies. *See id.*, ¶ 7. Biggs and Unique Settlements allegedly agreed to act as broker for the sales, and allegedly agreed to charge a commission of no more than 0.5% of the face value of each policy sold. *See id.*, ¶ 8. Biggs and Unique Settlements allegedly acted as Crosswhite's agents in providing broker services to the

plaintiff trusts. *See id.*, ¶ 9.

Potter alleged that Biggs and Unique Settlements charged commissions higher than the maximum amount agreed to and/or retained funds from the sale of the life insurance policies that should have gone to the plaintiff trusts. *See id.*, ¶ 10. Biggs and Unique Settlements allegedly paid these excess commissions and retained monies to Crosswhite. *See id.*

According to Potter's allegations, the maximum commission agreed to for the sale of the corpus of the Robert Burney, II ILIT (the "Burney Trust") was $15,000, and the maximum commission agreed to for the sale of the corpus of the Jack Strom ILIT (the "Strom Trust") was $10,000. *See id.*, ¶ 11. The amounts of the commissions actually charged to these plaintiff trusts were, respectively, $25,000 and $60,000. *See id.* Thus, according to Potter's allegations, the complained-of actions initially damaged the Burney Trust in the amount of $10,000, and the Strom Trust in the amount of $50,000. *See id.*

In addition to the foregoing, Biggs and Unique Settlements received a "production bonus" of $200,000 from the buyer of the life insurance policies held by the Burney Trust, the Strom Trust and four other plaintiff trusts the claims of which have been voluntarily dismissed.[1] *See id.*, ¶ 13. The $200,000 bonus allegedly should have been paid to the six plaintiff trusts from which the life insurance policies were purchased, but instead allegedly was retained by Biggs and Unique Settlements and paid to Crosswhite. *See id.*

It appears from the evidence in the record that Potter first learned of the excess

---

[1] According to the allegations of the second amended complaint, the total maximum commissions agreed to for the sale of the life insurance policies held by the six trusts in connection with which the $200,000 production bonus was paid was $217,500. *See* Second Amended Complaint, ¶¶ 11, 13.

Page 7 - FINDINGS AND RECOMMENDATION AND ORDER

commissions retained by Crosswhite in or around January 2007. On or around January 19, 2007, it further appears that Crosswhite paid $550,000 to some of his former business partners as part of a mediated settlement of a dispute in connection with the excess commissions retained by Crosswhite. Although it appears from the evidence in the record that Crosswhite may have intended and/or instructed that these monies be retained or otherwise used by his former business partners, his former business partners promptly transferred the $550,000, along with an additional $50,000 received by them on Crosswhite's behalf from another, unspecified source, to Potter, who distributed the money among the plaintiff trusts to reimburse them in part for the excess commissions Crosswhite had retained from the sale of the life insurance policies.[2] *See id.*, ¶ 14.

The record contains no evidence suggesting that any of the foregoing allegations lacked evidentiary support or would have been proven inaccurate following reasonable investigation.

In February 2007, Potter filed an action against Crosswhite, Biggs, and Unique Settlements on behalf of the sixteen plaintiff trusts to recover the balance of the excess commissions. According to Potter's testimony, the attorneys then representing Crosswhite pressured him to dismiss Crosswhite as a defendant in that action on the grounds that Crosswhite had already repaid all of the excess commissions he had retained. Potter agreed to dismiss Crosswhite as a defendant in that action effective July 15, 2008. Subsequently, the attorney then representing the plaintiff trusts advised Potter that discovery received from Biggs and Unique Settlements indicated that Crosswhite had retained a total of $1,912,500 in excess commissions

---

[2] According to the allegations of the second amended complaint, the total amount charged to the plaintiff trusts for brokerage commissions in excess of the total maximum commissions allegedly agreed to was $1,712,500. *See* Second Amended Complaint, ¶ 11.

Page 8 - FINDINGS AND RECOMMENDATION AND ORDER

(including the $200,000 production bonus) on the sales of the plaintiff trusts' life insurance policies. This action followed.

## II.  Relevant Procedural History

Potter filed this action July 15, 2009. In his originally filed complaint, Potter alleged three claims of fraud, a claim of conversion, a claim of money had and received, and a claim of unjust enrichment. The gravamen of the first two claims of fraud was that Crosswhite and/or his agents knowingly misrepresented that they would limit commissions to 0.5% of face value in order to induce the plaintiff trusts to sell their life insurance policies through Crosswhite and/or his agents. The gravamen of the third claim of fraud was that Crosswhite knowingly misrepresented to Potter that he had repaid all excess commissions in order to induce Potter to dismiss Potter's first-filed action against Crosswhite. The gravamen of each of the remaining claims was that Crosswhite had improperly retained the excess commissions charged in connection with the sales of the plaintiff trusts' life insurance policies.

Five months later, on December 15, 2009, no pretrial order having been lodged, I issued an order to show cause why this action should not be dismissed for want of prosecution. On January 4, 2010, Potter filed a response to my order, in support of which he provided his sworn affidavit that he filed this action in order to preserve the plaintiff trusts' claims against Crosswhite and to prevent them from becoming time-barred while working to negotiate a settlement. Potter further testified that, although he is trustee of each of the plaintiff trusts, each such trust has a trustor and/or beneficiary with rights that would be impacted by any decision to settle with Crosswhite, so that as a practical matter Potter must confer and/or negotiate with each such trustor/beneficiary before he may take any action to settle or otherwise dispose of the

Page 9 - FINDINGS AND RECOMMENDATION AND ORDER

plaintiff trusts' claims. Potter asked for and received an extension of the time within which to lodge a pretrial order.

On February 2, 2010, Crosswhite filed an unopposed motion to extend the pretrial deadlines once again. In response, I extended the pretrial order deadline to March 19, 2010.

Crosswhite moved to dismiss the claims in this action for lack of subject-matter and personal jurisdiction on February 17, 2010. That same day, Potter filed an amended complaint which identified the plaintiff trusts with particularity, but did not change thee gravamen of any of the six claims alleged against Crosswhite. In addition, Potter moved for leave to withdraw as counsel of record for the plaintiff trusts. By sworn affidavit, Potter indicated that he also intended to resign as trustee for the plaintiff trusts as soon as would be feasible. Potter ultimately voluntarily withdrew his motion for leave to withdraw as counsel of record before I issued a ruling in connection with it.

On March 9, 2010, Potter filed a second amended complaint. Again, the amended pleading did not modify the gravamen of any of the six claims alleged. Nine days later, on March 18, 2010, Potter filed a notice of dismissal with the court, indicating that he voluntarily withdrew his claims to the extent alleged on behalf of eight of the sixteen plaintiff trusts.

On April 5, 2010, Crosswhite filed a renewed motion to dismiss, arguing that dismissal was appropriate on jurisdictional grounds and because Potter had failed to state any claim as to which relief could be granted. On May 21, 2010, Potter advised the court that he was withdrawing his claims to the extent alleged on behalf of six of the eight remaining plaintiff trusts, leaving only the claims alleged on behalf of the Burney trust and the Strom Trust at issue. That same day, he filed an opposition to Crosswhite's motion to dismiss, in which he argued, not

Page 10 - FINDINGS AND RECOMMENDATION AND ORDER

that the claims alleged on behalf of the Burney Trust and Strom Trust met the jurisdictional threshold of $75,000 for the exercise of diversity jurisdiction, but that the court could appropriately exercise supplemental jurisdiction over those claims. In addition, Potter asserted that evidence to be presented at trial would establish the court's personal jurisdiction over Crosswhite.

On July 29, 2010, I recommended that the court grant Crosswhite's motion to dismiss on jurisdictional grounds. Specifically, I calculated that, taking into account both the production bonus and the total of $600,000 received by Potter in partial reimbursement for the excess commissions retained by Crosswhite, the damages sought on behalf of the Burney Trust amounted to $20,289.45, and the damages sought on behalf of the Strom Trust amounted to $41,677.15. On the grounds that, even if the claims for damages were aggregated, the jurisdictional threshold was not met, I recommended that Potter's claims be dismissed for lack of subject-matter jurisdiction. As alternative grounds for my recommendation of dismissal, I noted that Potter had failed to meet his burden to establish the court's personal jurisdiction over Crosswhite. I further concluded as a matter of law that the damage claims asserted on behalf of the two plaintiff trusts could not be aggregated for jurisdictional purposes. Potter timely filed objections to my Findings and Recommendation, but only as to two factual minutiae that Potter characterized as dicta, and not as to any of my legal conclusions (including my conclusion that the damages claims could not be aggregated). On September 20, 2010, Judge King adopted my recommendation without modification.

## ANALYSIS

### I. Motion for Attorney Fees and Costs

#### A. 28 U.S.C. § 1927

Crosswhite offers no argument or evidence that Potter has in any manner or degree unnecessarily multiplied these proceedings. To the contrary, Crosswhite's arguments in support of the proposition that Potter's conduct is sanctionable under Section 1927 uniformly address the merits of the claims Potter raised in his complaint. Moreover, analysis of Potter's filings in this matter establishes no grounds for the conclusion that Potter filed any document frivolously or recklessly, or otherwise for the purpose of harassing Crosswhite, in the course of this action.

Even on the *arguendo* assumption – for which there is no supporting evidence in the record – that Potter filed his claims in this action in bad faith and with full knowledge that they lacked merit, such conduct would not be sanctionable under Section 1927. *See* 28 U.S.C. § 1927; *see also Moore*, 78 F.3d at 435. Because Potter's conduct in the course of these proceedings was clearly not sanctionable under Section 1927, Crosswhite's motion for attorney fees and costs should be denied to the extent premised on Section 1927.

#### B. The Court's Inherent Power to Sanction Misconduct

Crosswhite argues at length that, had the court reached the merits of Potter's claims, it would have found them without merit. Crosswhite invites the court to conclude from the purported weakness of Potter's claims that Potter filed this action in bad faith, and that therefore Crosswhite is entitled to the requested attorney fee sanction. Crosswhite offers no direct evidence of Potter's supposed bad faith.

Despite Crosswhite's protestations, the evidentiary record is replete with evidence of

Page 12 - FINDINGS AND RECOMMENDATION AND ORDER

Potter's motivation for bringing this action, and has been since January 4, 2010, when Potter responded to this court's order to show cause why this action should not be dismissed for want of prosecution. Potter's sworn testimony is that he brought this action in order to preserve the plaintiff trusts' claims from becoming time-barred while he pursued settlement of those claims, and Crosswhite offers no evidence to the contrary. Moreover, Potter has offered evidence into the record sufficient to establish at least a colorable basis for all or most of the claims alleged against Crosswhite, whereas Crosswhite has offered no evidence to suggest that, for example, he did not agree to charge no more than a specified maximum commission on the sales of the plaintiff trusts' life insurance policies, or that he did not retain commissions in excess of the maximum percentages agreed to.

Some of Crosswhite's arguments as to the merits of some of Potter's claims appear persuasive, as, for example, his arguments that Potter's first two fraud claims and conversion claim were time-barred when filed. By contrast, his arguments that the fraud claims were pled with inadequate particularity or that the money had and received and unjust enrichment claims were without merit appear less persuasive. But even on the *arguendo* assumption that none of Potter's claims would have survived had the court reached their merits, the record does not permit the conclusion that Potter acted in subjective bad faith when he filed his complaint in this action. Instead, the evidence is that Potter at all material times possessed credible evidence that Crosswhite had taken actions the consequence of which was injury to the trusts for which he acted as trustee. Potter's conduct in filing the February 2007 action and this action was proper in light of that evidence.

Because the record does not permit a finding that Potter acted in bad faith or with

Page 13 - FINDINGS AND RECOMMENDATION AND ORDER

improper motivation in filing or prosecuting this action, and because subjective bad faith is requisite for imposition of sanctions pursuant to the court's inherent power, *see Stoneberger*, 805 F.2d at 1393, Crosshite's motion for attorney fees and costs should be denied to the extent premised on the court's inherent power to sanction misconduct.

## II. Attorney Fees for Opposing Crosswhite's Motion for Imposition of Sanctions

As noted above, Crosswhite voluntarily withdrew his motion for imposition of sanctions pursuant to Federal Civil Procedure Rule 11(c) on the eve of the oral argument scheduled in connection with that motion. However, in opposing the motion before it was withdrawn (and before Crosswhite filed his reply in support of it), Potter asserted a right to award of his attorney fees incurred in connection with his opposition, on the grounds that the motion was fatally procedurally defective and unwarranted on the merits when filed. Because Rule 11(c)(2) permits award of attorney fees to the prevailing party on a Rule 11 motion only where "warranted," the court is called upon to analyze the merits of Crosswhite's motion notwithstanding the fact that it has been withdrawn.

Rule 11(c) requires that a party moving for sanctions under Rule 11 serve the motion on the party against whom sanctions are sought, and then provide that party 21 days following service of the motion within which to correct the putatively sanctionable filing before filing the motion with the court. *See* Fed. R. Civ. P. 11(c)(2). In *Barber v. Miller*, 146 F.3d 707, (9th Cir. 1998), the Ninth Circuit quoted the Advisory Committee Notes to the amendments that created these procedural requirements as follows:

> These provisions are intended to provide a type of "safe harbor" against motions under Rule 11 in that a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refused to withdraw

Page 14 - FINDINGS AND RECOMMENDATION AND ORDER

> that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation. Under the former rule, parties were sometimes reluctant to abandon a questionable contention lest that be viewed as evidence of a violation of Rule 11; under the revision, the timely withdrawal of a contention will protect a party against a motion for sanctions.

*Barber*, 146 F.3d at 710, *quoting* Fed. R. Civ. P. 11; Adv. Comm. Notes, 1993 Amend. Moreover, the Ninth Circuit further quoted the Advisory Committee Notes in support of the conclusion that only formal service of the motion that the moving party intends to file with the court in the event the putatively sanctionable filing is not withdrawn may trigger the beginning of the 21-day period:

> To stress the seriousness of a motion for sanctions and to define precisely the conduct claimed to violate the rule, the revision provides that the "safe harbor" period begins to run only upon service of the motion. In most cases, however, counsel should be expected to give informal notice to the other party, whether in person or by a telephone call or letter, of a potential violation before proceeding to prepare and serve a Rule 11 motion.

*Id., quoting* Fed. R. Civ. P. 11; Adv. Comm. Notes, 1993 Amend. As the *Barber* court concluded, "[i]t would therefore wrench both the language and purpose of the amendment to the Rule to permit an informal warning to substitute for service of a motion." *Id.* The *Barber* court further noted the Advisory Committee Notes expressly state that "[g]iven the 'safe harbor' provisions discussed below, a party cannot delay serving its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention)." *Id.* at 710-711, *quoting* Fed. R. Civ. P. 11; Adv. Comm. Notes, 1993 Amend. The *Barber* court expressly concluded that because a Rule 11(c) motion served after a complaint had already been dismissed would not give the party who filed the putatively sanctionable filing an opportunity to correct the violation of Rule 11(b), the courts may not issue sanctions in connection with such a late-served motion. *See id.*; *see*

Page 15 - FINDINGS AND RECOMMENDATION AND ORDER

*also, e.g., Holgate v. Baldwin*, 425 F.3d 671, 679-680 (9th Cir. 2005) (to same effect); *Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 788-789 (9th Cir. 2001) (reversible error for a district court to award sanctions pursuant to Rule 11(c) on a party's motion that was not strictly compliant with the procedural requirements of the rule). Because Crosswhite's motion was not filed until after Potter's claims had been dismissed on jurisdictional grounds, it suffers from precisely the same defect as the Rule 11 motion in *Barber*, and was therefore fatally procedurally defective as a matter of law.

In addition, analysis establishes that, although Potter would not likely have prevailed on all of his claims, they were not in their entirety lacking in legal or factual basis. It appears effectively undisputed, for example, that Crosswhite and/or his agents agreed to charge commissions less than specified maxima in connection with the sale of the life insurance policies held by the plaintiff trusts, and that they ultimately retained amounts in excess of those maxima. At minimum, then, Potter had colorable legal and factual bases for his money had and received and unjust enrichment claims.[3]

The record further establishes that Potter undertook reasonable inquiry of the legal and

---

[3] Crosswhite argues repeatedly that the unjust enrichment claim was without merit for reasons identical to those articulated by Judge Aiken in the February 2007 action, but never specifies what those reasons were. It appears clear from the evidence of record in these proceedings that, at the time Judge Aiken instructed Potter that he did not have a viable unjust enrichment claim against Crosswhite, Potter did not yet have documentary evidence that Crosswhite had retained amounts in excess of the $550,000 he tendered to his business partners in January 2007. Indeed, it is clear that Potter did not obtain that evidence until after Crosswhite had been dismissed as a defendant in the February 2007 action. Because Judge Aiken did not have the benefit of evidence that Crosswhite had retained improper gains in excess of his repayment when she found Potter's claim of unjust enrichment to be without merit, I decline Crosswhite's invitation indiscriminately to adopt Judge Aiken's legal conclusion, issued on a different factual record in different proceedings, as my own in these proceedings.

Page 16 - FINDINGS AND RECOMMENDATION AND ORDER

factual bases for his claims before filing his complaint. Indeed, Potter withdrew substantially the same claims against Crosswhite in the February 2007 action, and did not file his claims in this action until discovery in the February 2007 action produced documentary evidence of Crosswhite's scheme to retain secret commissions on the sale of the life insurance policies held by the plaintiff trusts and of the dollar amounts retained by Crosswhite in connection with that scheme.

Because Potter had adequate legal and factual bases for his allegations against Crosswhite, and because Potter conducted a reasonable and competent investigation into the bases of his allegations before filing his complaint, Crosswhite's motion would not have been granted even if Crosswhite had complied with the strict procedural requirements of Rule 11. Because Crosswhite's Rule 11 motion was patently and incurably procedurally defective when filed, because it was in addition without substantive merit, and because the motion was not withdrawn until the eve of oral argument, an award of Potter's attorney fees reasonably incurred in connection with his opposition to the motion is warranted.

## CONCLUSION

For the reasons set forth above, I recommend that Crosswhite's motion (#35) for attorney fees and costs be denied, and that Potter be awarded his attorney fees and costs reasonably incurred in connection with his opposition to Crosswhite's withdrawn motion (#42) for imposition of sanctions pursuant to Federal Civil Procedure Rule 11.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections

Page 17 - FINDINGS AND RECOMMENDATION AND ORDER

are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 2nd day of December, 2010.

_____
Honorable Paul Papak
United States Magistrate Judge

Page 18 - FINDINGS AND RECOMMENDATION AND ORDER