FILED
MAY 0 5 2011

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARK POTTER,

      Plaintiff,

                                    CV 09-814-PK

                                    FINDINGS AND

v.                                 RECOMMENDATION

THOMAS CROSSWHITE,

      Defendant.

PAPAK, Magistrate Judge:

      Plaintiff Mark Potter, acting in his capacity as trustee of sixteen irrevocable life insurance trusts, brought this action against defendant Thomas Crosswhite on July 15, 2009, alleging Crosswhite's liability for fraud, conversion, money had and received, and unjust enrichment. Although in his pleading Potter asserted that this court had subject-matter jurisdiction over his action pursuant to 28 U.S.C. § 1332(a), based on the diversity of the parties and the amount in controversy, by May 21, 2010, Potter had voluntarily dismissed his claims to the extent brought on behalf of fourteen of the sixteen plaintiff trusts, with the consequence that the damage claims

Page 1 - FINDINGS AND RECOMMENDATION AND ORDER

asserted on behalf of the two remaining trusts were insufficient to meet the jurisdictional minimum of $75,000. On July 29, 2010, I recommended that the claims brought on behalf of the two remaining plaintiff trusts be dismissed for lack of subject-matter jurisdiction, and additionally for failure to establish personal jurisdiction over Crosswhite, and on September 20, 2010, Judge King adopted my recommendation without modification.

On October 4, 2010, Crosswhite moved for an award of his attorney fees and costs as a sanction for Potter's allegedly improper conduct over the course of these proceedings, pursuant to 28 U.S.C. § 1927 and/or the court's inherent power to sanction litigant or attorney misconduct. On October 27, 2010, Crosswhite filed an additional motion for imposition of the same sanction pursuant to Federal Civil Procedure Rule 11(c). In opposition to Crosswhite's motion for imposition of sanctions under Rule 11(c), Potter requested that he be awarded his own attorney fees incurred in resisting the motion. After first filing a reply memorandum in support of his Rule 11(c) motion, Crosswhite voluntarily withdrew the motion on November 23, 2010, the eve of oral argument, by which time Potter had already incurred expenses in connection with drafting a memorandum in opposition to the motion, reviewing Crosswhite's reply memorandum in support of the motion, and preparing for oral argument on the motion.

On December 2, 2010, I recommended that Crosswhite's remaining Section 1927/inherent power motion for attorney fees and costs be denied, and that Potter's request for award of attorney fees incurred in opposing Crosswhite's withdrawn Rule 11(c) motion be granted. On January 10, 2011, Judge King adopted my recommendation without modification.

Now before the court is Potter's petition for fees and costs incurred in opposing Crosswhite's withdrawn Rule 11(c) motion. In support of his petition, Potter asserts his

Page 2 - FINDINGS AND RECOMMENDATION AND ORDER

entitlement to an award in the total amount of $42,728.11 ($41,820.00 in attorney fees and $908.11 in costs), but nevertheless requests an award in the maximum total amount of $26,371.90, waiving his entitlement, if any, to an award in excess of that amount. I have considered the petition and all of the pleadings on file. For the reasons set forth below, I recommend that Potter be awarded his fees and costs in the total amount of $7,197.72.

## ANALYSIS

### I.    Potter's Entitlement to Award of Attorney Fees and Costs

As indicated above, by order (#63) dated January 10, 2011, Judge King granted Potter's request for award of attorney fees and costs reasonably incurred in opposing Crosswhite's subsequently withdrawn motion (#42) for sanctions under Federal Civil Procedure Rule 11(c). In so doing, Judge King expressly adopted my findings and recommendation (#58) dated December 2, 2010, in which I found that award of fees and costs was warranted under Rule 11(c)(2). Although Crosswhite has indicated that he may appeal the court's award of attorney fees and costs, for present purposes he does not challenge Potter's entitlement to such an award, but rather challenges only the reasonableness of Potter's claimed time expenditures and of Potter's requested hourly rate.

### II.    Attorney Fees

#### A.    The Lodestar

Determination of a reasonable attorney's fee begins with the "lodestar," which is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563-64 (1986). Potter relied on the services of attorney Martin W. Jaqua in opposing Crosswhite's Federal Civil

Procedure Rule 11(c) motion and in preparing his fee petition. In connection with litigating the Rule 11(c) motion, Potter claims to be entitled to compensation for 116.4 hours of Jacqua's time at a rate of $300 per hour, or $34,920.00.[1]  In addition, Potter claims to be entitled to compensation for 23.0 hours of Jacqua's time expended in connection with preparing his fee petition at a rate of $300 per hour, or $6,900.00.  Potter therefore claims entitlement to $41,820.00 in attorney fees in total.

Preliminary analysis of Jacqua's time records establishes that, contrary to Potter's assertions, of the 139.4 hours of time expenditures set forth in Jacqua's time records, 115.2 hours (rather than 116.4) reflect time expended in litigation in connection with Crosswhite's two post-judgment motions, and 24.2 hours (rather than 23.0) reflect time expended in preparation of Potter's fee petition.  The discrepancy appears to lie in Potter's characterization of Jacqua's time entry dated December 7, 2010, reflecting an expenditure of 1.2 hours in connection with the preparation of Potter's fee petition, which Potter may have erroneously characterized as a time expenditure in connection with opposing one or both of Crosswhite's post-judgment motions. Properly characterized, Potter claims entitlement to an award of $34,560.00 in connection with litigating Crosswhite's Rule 11(c) motion, and $7,260.00 in connection with preparing his fee petition.

### 1.    Hours Reasonably Expended

Crosswhite challenges Potter's assertion that he may request compensation for time expended in connection with opposing Crosswhite's motion (#35) for attorney fees and costs as

---

[1] Potter concedes that this time includes time expended in connection with opposing Crosswhite's motion (#35) for attorney fees and costs as well as time expended in connection with opposing the motion (#42) for sanctions under Rule 11(c).

Page 4 - FINDINGS AND RECOMMENDATION AND ORDER

well as time expended in connection with opposing the motion (#42) for sanctions under Rule

11(c).  On this basis, Crosswhite argues that Potter is entitled, at most, to request compensation

in connection with 4.8 hours of Jacqua's time expended on seven tasks performed between

November 9 and November 22, 2010.  In addition to Crosswhite's articulated objections, the

court is obliged to scrutinize Potter's fee petition independently to determine its reasonableness.

*See, e.g.*, *Gates v. Deukmejian*, 987 F.2d 1392, 1400-1401 (9th Cir. 1992).

It is the fee claimant's burden to demonstrate that the number of hours spent was

"reasonably necessary" to the litigation and that counsel made "a good faith effort to exclude

from [the] fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley v.*

*Eckerhart*, 461 U.S. 424, 434 (1983); *see also Frank Music Corp. v. Metro-Goldwyn-Mayer,*

*Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989) ("plaintiffs bear the burden of showing the time spent

and that it was reasonably necessary to the successful prosecution of their . . . claims); *Chalmers*

*v. Los Angeles*, 796 F.2d 1205, 1211 (9th Cir. 1986) (district court determines numbers of hours

reasonably expended in furtherance of the successful aspects of a litigation).  Moreover, it is

likewise the fee claimant's burden to "submit evidence supporting the hours worked . . . .  Where

the documentation of hours is inadequate, the district court may reduce the award accordingly."

*Hensley*, 461 U.S. at 433; *see also, e.g., Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945-946

(9th Cir. 2007) (same).

For the reasons set forth below, I find that the evidence submitted by the parties supports

an award of compensation for 17.9 hours of Jacqua's time expended in connection with litigating

Crosswhite's Rule 11(c) motion, and 24.2 hours of Jacqua's time expended in connection with

litigating Potter's fee petition.

Page 5 - FINDINGS AND RECOMMENDATION AND ORDER

a.    Hours Expended in Litigation of the Federal Civil Procedure
Rule 11(c) Motion

A fee petitioner may be compensated only for hours expended in furtherance of

successful claims, or of claims closely related to successful claims. *See Sloman v. Tadlock*, 21

F.3d 1462, 1474 (9th Cir. 1994).  In general, claims are closely related for fee-shifting purposes if

they "involve a common core of facts *or* are based on related legal theories." *Webb v. Sloan*, 330

F.3d 1158, 1168 (9th Cir. 2003) (emphasis original).  Here, Potter incurred fees in connection

with post-judgment proceedings when he opposed Crosswhite's Section 1927/inherent power

motion (#35) for attorney fees and costs and when he opposed Crosswhite's Rule 11(c) motion

(#42) for sanctions.  As indicated in Potter's memorandum (#51) in opposition to Crosswhite's

Rule 11(c) motion, Potter's primary argument in opposition to the Rule 11(c) motion was that the

motion was fatally procedurally defective.  As a secondary, alternative argument, Potter

incorporated by reference the factual and legal arguments he had already adduced in opposition

to Crosswhite's earlier-filed motion for attorney fees and costs, and "summarize[d] . . . why those

same points appl[ied] with equal force in the Rule 11 context."

Under the circumstances, I agree with Crosswhite that it would be unreasonable to permit

Potter to tax Crosswhite with his expenses incurred in opposing Crosswhite's Section

1927/inherent power motion.  Potter's primary argument in opposition to Crosswhite's Rule 11(c)

motion was premised on niceties of procedural law peculiar to Rule 11(c), with no material

underlying factual issues or legal issues in common with his opposition to the Section

1927/inherent power motion.  Moreover, although the factual and legal issues adduced in

opposition to the Section 1927/inherent power motion overlapped completely with Potter's

secondary, alternative argument in opposition to the Rule 11(c) motion, the rationale for awarding fees in connection with litigating both successful claims and closely related unsuccessful claims does not apply with equal force in the context of litigation in opposition to another party's post-judgment motions. Where a claimant prevails on one claim but not on another, closely related claim, it may with some justice be presumed that, due to the close relationship between the claims, work performed in support of the unsuccessful claim either was inextricable from work performed on the successful claim, or tended to reinforce arguments made in support of the successful claim, or both, and that therefore it would be unjust to exclude hours expended in support of the unsuccessful claim from a fee award. By contrast, where a party opposes two closely related motions, as to which prevailing party fees are available in connection with one but not the other, the presumption is that absent the motion in connection with which prevailing party fees are available, the party would have been required to adduce all of the same arguments in opposition to the other motion, so that it would be unjust to award fees in connection with hours that would have been expended even if the former motion had not been filed. The court should therefore exercise its discretion under Rule 11(c)(2) to exclude from the lodestar calculation of Potter's fee award all hours expended in support of Potter's opposition to Crosswhite's Section 1927/inherent power motion.

In consequence, the following time entries submitted in support of Potter's fee petition should be excluded from the lodestar calculation: all time entries dating from prior to November 2, 2010, the first and third through fifth time entries for November 2, 2010, all time entries dating from November 3, 2010, to November 4, 2010, the first time entry for November 5, 2010, the second time entry for November 22, 2010, and all time entries not relating to the preparation of

Potter's fee petition dating from November 23, 2010, or later.

Analysis of the remaining time entries reveals no time expenditures that should be excluded from the lodestar calculation by reason of reflecting clerical or administrative tasks, inadequately specified tasks, or redundant or duplicative, or excessive expenditures of time, and no instances of impermissible block billing.

**b.     Hours Expended in Litigation of the Fee Dispute**

Analysis of the time entries reflecting tasks relating to the preparation of Potter's fee petition reveals no time expenditures that should be excluded from the lodestar calculation by reason of reflecting clerical or administrative tasks, inadequately specified tasks, or redundant or duplicative, or excessive expenditures of time, and no instances of impermissible block billing.

**2.     Reasonable Rate**

It is well settled within the Ninth Circuit and in this District that:

> The prevailing market rate in the community is indicative of a reasonable hourly rate. . . . The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation.

*Jordan v. Multnomah County*, 815 F.2d 1258, 1262-1263 (9th Cir. 1987), *citing Blum v. Stenson*, 465 U.S. 886, 895-897, 895 n. 11 (U.S. 1984).

Potter requests that Jacqua's time be compensated at an hourly rate of $300. In a sworn affidavit, Jacqua provides evidence that, at the time he performed his work in this action, he had over 24 years of experience as a litigator in private practice, having received a J.D. from the University of Oregon School of Law in 1985 and having joined the Oregon State Bar in 1986. Jacqua reports that his work in this matter has been compensated by the Oregon State Bar

Professional Liability Fund at an hourly rate of $160, but opines that it would be reasonable to compensate his work at a rate of $300 per hour. In support of his opinion, Jacqua offers excerpts from the Oregon State Bar's 2008 Economic Survey, which indicates that for attorneys of his vintage, compensation at an hourly rate of $300 would have constituted approximately a 79th percentile rate in 2008.

In opposition, Crosswhite argues, without factual basis, that Potter has waived compensation at any hourly rate in excess of $160. Crosswhite further argues that, because $160 is Jacqua's agreed-upon PLF rate, $160 is necessarily the prevailing market rate applicable to Jacqua. Crosswhite does not otherwise offer evidence as to the rate at which Jacqua's time may reasonably be compensated.

I take judicial notice that the Oregon State Bar 2007 Economic Survey – which provides more detailed and more useful summaries of prevailing market rates than does the 2008 Economic Survey – provides information as to rates actually charged by Oregon attorneys in 2006. According to the 2007 Economic Survey, the median hourly rate for legal services charged by Portland-area attorneys with 21-30 years' experience was $275 in 2006, with a 25th percentile rate of $225, a 75th percentile rate of $325, and a 95th percentile rate of $399. An appropriate method for adjusting the foregoing rates for inflation in order to estimate the corresponding rates prevalent in the Portland legal community in 2010, when Jacqua performed his work in this action, is to multiply the 2006 rates times the consumer price index for urban consumers ("CPI-U") for the years in which the fees were incurred, then dividing the resulting quotients by the CPI-U for 2006.

I take judicial notice that the United States Department of Labor's Bureau of Labor

Statistics has published a CPI-U for the Western states of 205.7 for 2006 and of 221.203 for 2010. On this method, the estimated median hourly rate for legal services charged by Portland-area attorneys with 21-30 years' experience in 2010 would therefore be $295.73, with an estimated 25th percentile rate of $241.96, an estimated 75th percentile rate of $349.49, and an estimated 95th percentile rate of $429.07.

In light of all of the evidence in the record, I find that an hourly rate of $300 is reasonable for an attorney of Jacqua's experience and credentials. $300 is approximately the estimated median hourly rate charged by Portland-area attorneys of Jacqua's experience in 2010, and the record does not establish grounds for significant deviation from the estimated median rate.

### 3. Calculation and Adjustment of the Lodestar Figure

#### a. Fees for Litigation

The product of the 17.9 hours reasonably expended by Jacqua in connection with opposing Crosswhite's Rule 11(c) motion and his reasonable hourly rate of $300 is $5,370.00. Thus, the lodestar calculation results in a total of $5,370.00 in attorney fees reasonably incurred in connection with litigating the merits of this action.

#### b. Fees-on-Fees

The product of the 24.2 hours reasonably expended by Jacqua in connection with litigating this fee dispute and his reasonable hourly rate of $300 is $7,260.00. Thus, the lodestar calculation results in a total of $7,260.00 in attorney fees reasonably incurred in connection with preparing Potter's fee petition.

The Ninth Circuit has approved arithmetic reduction of an award of "fees-on-fees" by the ratio of the fees actually awarded in the underlying fee dispute to the amount therein requested.

*See, e.g., Thompson v. Gomez*, 45 F.3d 1365, 1366-1368 (9th Cir. 1995). I see no reason to deviate from this reasonable procedure, and find that the lodestar figure for fees-on-fees should be reduced by the ratio of the lodestar figure calculated for Rule 11 litigation fees to the amount of fees requested therefor in Potter's fee petition. Here, Potter asserts an entitlement to an award of $34,560.00 in compensation for attorney fees in connection with litigating Crosswhite's Rule 11(c) motion. However, Potter has waived his claim to total compensation of fees and costs in any amount in excess of $26,371.90. It would therefore be inappropriate to use $34,560.00 as the amount of fees requested in connection with opposing Crosswhite's Rule 11(c) motion. Instead, the appropriate figure is $21,330.52 ($34,560.00 / $42,728.11 = 0.81; $26,371.90 * 0.81 = $21,330.52). The lodestar calculation yields an appropriate award of $5,370.00, or approximately 25% of the construed amount requested. I find, therefore, that the lodestar figure for fees-on-fees should be reduced to $1,827.72.

### c.    Adjustment

It is the fee claimant's burden to prove the reasonableness of the lodestar amount. *See Pennsylvania*, 478 U.S. at 563-64. The factors that may properly be considered in determining and evaluating the lodestar figure include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See, e.g., Kerr v. Screen Extras Guild*, 526 F.2d 67, 70 (9th Cir. 1975). Only those factors

Page 11 - FINDINGS AND RECOMMENDATION AND ORDER

which are applicable need be addressed.  *See, e.g., Sapper v. Lenco Blade, Inc.*, 704 F.2d 1069,

1073 (9th Cir. 1983).

It is within the discretion of this court to adjust the lodestar figure either:  (1) downward

if the plaintiff has achieved only partial or limited success or if the fee is otherwise unreasonable,

*Hensley*, 461 U.S. at 435-36 (1983); or (2) upward in "rare" and "exceptional" cases,

*Pennsylvania*, 478 U.S. at 565.  The presumption, however, is that the lodestar figure represents

a reasonable fee.  *See Miller v. Los Angeles County Bd. of Educ.*, 827 F.2d 617, 621 (9th Cir.

1987).

Opposing Crosswhite's Rule 11(c) motion was a relatively straightforward matter.  I

therefore do not find that any adjustment of the lodestar figure is warranted here.  I recommend

an award of attorney fees in the lodestar amounts provided above, specifically $5,370.00 and

$1,827.72, resulting in a total fee award of $7,197.72.

## III.    Costs

Potter claims a total of $908.11 in costs he characterizes as compensable under this

court's order (#63) awarding him his attorney fees and costs reasonably incurred in connection

with opposing Crosswhite's Rule 11(c) motion.  In support, Potter offers evidence constituting a

list of photocopying and postage charges totaling $189.43.  Although each charge listed is dated,

no other information is provided from which any conclusion could be drawn as to the reason

each charge was incurred.  Because it is impossible to determine which, if any, of these costs was

occasioned by the need to oppose Crosswhite's Rule 11(c) motion, it would be inappropriate to

tax Crosswhite with any of the costs claimed.  I therefore recommend that Potter's award include

no amount attributable to costs.

## CONCLUSION

For the reasons set forth above, I recommend that Potter's motion (#71) for attorney fees and costs be granted, and that Potter be awarded his attorney fees and costs in the total amount of $7,197.72.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 5th day of May, 2011.

Honorable Paul Papak
United States Magistrate Judge